*193
 
 OPINION OF THE COURT
 

 Kaye, J.
 

 In this damages action by Dynamics Corporation of America (DCA) against Marine Midland Bank (Marine) for misconduct purportedly precipitating DCA’s bankruptcy the issue is whether, following confirmation of its plan of arrangement, DCA in its own right can pursue claims against Marine which were not disclosed in its schedules filed with the bankruptcy court. We agree with the courts below that, in the circumstances presented, it cannot.
 

 As set forth in the second amended complaint, DCA and Marine had a long-standing banking relationship, with Marine administering DCA’s pension funds and stock transfer operations as well as providing funds for its acquisition program. In addition, DCA maintained a checking account with Marine; by written agreement the bank was authorized to collect checks that had been delivered to a post-office lockbox and deposit them in DCA’s account.
 

 In August 1972, DCA initiated proceedings under chapter XI of the Bankruptcy Act. Marine was one of the DCA’s major creditors in the bankruptcy. In November 1974, having been accepted by the requisite number of creditors and found to be in the best interest of the creditors, DCA’s proposed plan of arrangement was confirmed by the Bankruptcy Court of the Southern District of New York, the creditors accepting approximately 31 cents for each dollar owed.
 

 Barely eight months later, in July 1975, DCA in its own right commenced the present action against Marine for more than $70 million in damages, charging that beginning in 1970 Marine instigated a conspiracy to destroy DCA’s business. DCA alleged that Marine, in concert with its other lenders,
 
 *194
 
 forced a restructuring of its short-term debt, with the notes evidencing DCA’s bank borrowings falling, due on a common maturity date every 30 days. The last note issued by DCA to Marine, in the amount of $4,420,000, was dated June 28, 1972 and came due July 28, 1972. According to the complaint, Marine made repeated representations that the loan would be renewed as it had been in the past. DCA alleged that it relied on these representations and therefore made no efforts to secure financing from other sources, but that without its knowledge Marine had transferred the loan to its classified loan section with instructions that the loan be called when the note matured. The complaint further alleges that, although the loan was not in default until the close of business July 28, Marine appropriated the balance of DCA’s checking account and the uncollected checks from DCA’s lockbox at 10:30 a.m. that day and then notified DCA’s other lenders who immediately seized assets in their possession. DCA claims that as a result it was compelled to file its petition in bankruptcy court.
 

 Essentially three categories of misconduct are alleged: breach of agency and contract in connection with the lockbox; fraud and negligent misrepresentation in failing to renew the loan; and improper offsets against the loan prior to maturity.
 

 Applying the rationale of
 
 Stein v United Artists Corp.
 
 (691 F2d 885), Supreme Court, New York County (Gammerman, J.), granted Marine’s motion for summary judgment dismissing the complaint on the ground that DCA, as a discharged chapter XI debtor, cannot, in a subsequent plenary action brought in its own behalf, pursue (1) claims it failed to include in its filed schedule of assets about which it knew or should have known, or (2) unscheduled claims which were not "dealt with” in the bankruptcy proceeding within the meaning of the Bankruptcy Act
 
 (see,
 
 128 Mise 2d 739). The Appellate Division affirmed for the reasons stated at Special Term. We granted leave to appeal and now affirm.
 

 DCA undisputedly failed to disclose the claims in issue in its schedule of assets. Nonetheless, DCA urges that it never lost title to these claims, and can pursue them in this action because the claims were not fraudulently concealed but were omitted innocently. Additionally, DCA argues that it may assert its fraud claim because it did not accrue until after the company had emerged from chapter XI, and that it is entitled to pursue its "lockbox” causes of action because they were dealt with during the bankruptcy. These arguments are without merit.
 

 
 *195
 
 Chapter XI of the Bankruptcy Act
 
 [1]
 
 established a statutory procedure for voluntary reorganizations, permitting a debtor— under court supervision — to negotiate and propose a plan for the composition of its unsecured debts and liabilities, meanwhile continuing to operate its business. Filing of a petition vests the bankruptcy court with exclusive jurisdiction of the debtor and its property, wherever located.
 

 Central to a proceeding under chapter XI is the requirement that a debtor file with the bankruptcy court comprehensive schedules of its assets (Bankruptcy Act § 7 [a] [8]; § 302, 11 USC § 25 [a] [8]; § 702 [1976]; former Bankruptcy rules 108, 109; former chapter XI rule 11-11;
 
 see also,
 
 1A Collier, Bankruptcy 7.08-7.12, at 981-996.8 [14th ed]). The tangible and intangible property then owned by the debtor and set forth in the filed schedules represent the estate of the debtor available for distribution. The requirement of disclosure includes "[unliquidated claims of every nature, with their estimated value.” (Official Form No. 1, Schedule B-3, Item [c] [305 US 717, 726]; Official Form No. 48 [368 US 1063, 1064].) The schedules can be amended at any time during the proceeding
 
 (see,
 
 1A Collier, Bankruptcy ft 7.12, at 996.7-996.8). Such disclosure allows the bankruptcy court and the creditors to determine whether the claims should be pursued on the creditors’ behalf. (DCA in fact filed descriptions of 16 claims, none against Marine.)
 

 Where a trustee is appointed, as for example in a chapter X proceeding, claims for injury to property, such as tort claims of a debtor, vest in the bankruptcy trustee
 
 (see,
 
 Bankruptcy Act § 70 [a] [6], 11 USC § 110 [a] [6] [1976]). Where no trustee is appointed, as in a chapter XI proceeding, those claims reside in the debtor-in-possession, whose powers and responsibilities are in a sense akin to those of a trustee appointed by the bankruptcy court
 
 (see,
 
 Bankruptcy Act § 342, 11 USC § 742 [1976];
 
 Stein v United Artists Corp.,
 
 691 F2d 885, 890, 892,
 
 supra;
 
 8 Collier, Bankruptcy W 6.30-6.32, at 916-931 [14th ed];
 
 see also, Case v Los Angeles Lbr. Co.,
 
 308 US 106, 125-126;
 
 Weiss v Fleetwood Bank,
 
 261 App Div 572, 574-575).
 

 The only property that may revest in the debtor in its
 
 *196
 
 individual capacity at the conclusion of the proceeding is property that was "dealt with” in the bankruptcy (Bankruptcy Act § 70 [i], 11 USC § 110
 
 [i]
 
 [1976];
 
 [2]
 

 8 Collier,
 
 Bankruptcy If 6.31, at 927; 9 Collier, Bankruptcy f[ 9.33, at 440-442) or abandoned
 
 (Stein v United Artists Corp., supra,
 
 pp 890-892;
 
 Matter of Haupt & Co.,
 
 398 F2d 607, 612-613;
 
 Kraftsman Container Corp. v Finkelstein,
 
 461 F Supp 245, 252, n 7;
 
 Lapis Enters. v International Blimpie Corp.,
 
 84 AD2d 286, 289-290; 4A Collier, Bankruptcy If 70.42, at 501-516 [14th ed]). Property can be "abandoned” only where the trustee or the debtor-in-possession knows of it and manifests an intent to abandon it, inasmuch as revesting depends upon the fact that it has been consciously rejected or relinquished as part of the estate
 
 (see,
 
 Note,
 
 Abandonment of Assets by a Trustee in Bankruptcy,
 
 53 Colum L Rev. 415, 415-425;
 
 see also, First Natl. Bank v Lasater,
 
 196 US 115, 119;
 
 Stephan v Merchants Collateral Corp.,
 
 256 NY 418, 422). By the same token, property is "dealt with” when it has been listed in the debtor’s schedule of assets, administered by the bankruptcy court for the benefit of creditors, and not otherwise affected by the ultimate plan of arrangement involving the debtor’s other assets
 
 (see, Stein v United Artists Corp., supra,
 
 p 893;
 
 Kraftsman Container Corp. v Finkelstein, supra,
 
 p 252;
 
 see also, In re Southland Supply,
 
 657 F2d 1076, 1078, n 1).
 

 DCA does not argue that its unscheduled claims revested under the doctrine of abandonment. Thus, whether the present claims revested in DCA at the conclusion of the proceeding depends on whether they were "dealt with” in the proceeding. However, the causes of action DCA now seeks to pursue for itself were not disclosed during the bankruptcy; they were not listed in its filed schedules of assets, and they did not become part of the bankruptcy estate available for administration for the benefit of the unsecured creditors. These claims, therefore, were not "dealt with” within the meaning of section 70 (i) of the Bankruptcy Act. This conclusion pertains equally to all of DCA’s present causes of action, including the lockbox causes of action.
 

 DCA urges that these principles should not apply because it did not learn of its fraud or improper offset causes of action
 
 *197
 
 until after the chapter XI proceeding had ended. To support this position, however, DCA has presented only conclusory assertions, insufficient alone to defeat a motion for summary judgment
 
 (see, Zuckerman v City of New York,
 
 49 NY2d 557, 562). DCA has presented no evidentiary material sufficient to raise, as a triable issue of fact, that it knew or should have known of its claims against Marine at a time other than just prior to filing its petition in chapter XI. To the contrary, the evidentiary material in the record, detailing the pattern of events leading up to its recourse to bankruptcy court, establishes that DCA possessed sufficient information to have disclosed these causes of action as unliquidated claims in its schedule of assets. These claims, therefore, should have become part of the bankruptcy estate to be administered for the benefit of DCA’s unsecured creditors. Having failed to disclose the claims, so that they might be "dealt with” in the bankruptcy, DCA cannot now pursue them individually in this action.
 
 [3]
 

 That DCA may have innocently failed to schedule as unliquidated claims the causes of action it now seeks to pursue is immaterial. In chapter XI proceedings where the debtor continues as a debtor-in-possession, assuming a special status, a separate mechanism for discovering unlisted claims or other assets is typically absent. Without a rule precluding such a debtor from later pursuing claims about which it knew or should have known at the time of filing its petition, a debtor-in-possession might employ less than diligent efforts to ascertain and disclose all potential claims, thus undermining its obligation to the estate and prejudicing the interests of the unsecured creditors
 
 (Stein v United Artists Corp., supra,
 
 p 892). DCA’s reliance on
 
 Stephan v Merchants Collateral Corp.
 
 (256 NY 418,
 
 supra)
 
 and
 
 First Natl. Bank v Ldsater
 
 (196 US 115,
 
 supra)
 
 is misplaced. Those cases held that title to an unscheduled claim does not revest with the debtor following the conclusion of a bankruptcy proceeding simply because the trustee took no action with respect to it; the trustee, having had no knowledge of the claim, could not be deemed to have "abandoned” it
 
 (see, Stephan v Merchants Collateral Corp., supra,
 
 p 422;
 
 First Natl. Bank v Lasater, supra,
 
 p 119, quoted
 
 *198
 
 in
 
 Stephan v Merchants Collateral Corp., supra).
 
 Neither case is limited to instances in which the debtor has intentionally or fraudulently withheld such knowledge.
 

 Whatever other remedy might be available, for example in the bankruptcy court, DCA cannot pursue this individual action against Marine. In light of this disposition we do not reach Marine’s additional contentions that it should have summary judgment because DCA incurred no damages, or because DCA is estopped from asserting claims inconsistent with its position taken in the bankruptcy court.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, with costs.
 

 [1]
 

 .Bankruptcy Act of July 1, 1898, ch 541, 30 US Stat 544 (formerly codified as amended at 11 USC §§ 1-1103 [1976]), repealed by Act of November 6, 1978, Pub L 95-598, tit IV, § 401 (a), 92 US Stat 2549, 2682 (1978). Chapter XI was added to the Bankruptcy Act by the Chandler Act of 1938, Pub L 75-696, §§ 301-399, 52 US Stat 840, formerly codified at 11 USC §§ 701-799 (1976).
 

 [2]
 

 .Section 70 (i) of the Bankruptcy Act provides, in relevant part, that: "Upon the confirmation of any arrangement or plan, or at such later time as may be provided by the arrangement or plan, or in the order confirming the arrangement or plan, the title to the property dealt with shall revest in the bankrupt or debtor”.
 

 [3]
 

 .Both
 
 Danciger & Emerich, Oil Co. v Smith
 
 (276 US 542) and
 
 Rand v Iowa Cent. Ry. Co.
 
 (186 NY 58), heavily relied on by DCA, arose prior to the Chandler Act of 1938. Neither case involved a proceeding under chapter XI where the debtor — such as DCA — assumed the statutory role of a debtor-in-possession.