**In re ROUNDABOUT THEATRE COMPANY, INC., Debtor.**

**Michael FRIED and Barbara Balaberstrauss, Trustee of the Estate of Michael Fried, debtor, Appellants,**

v.

**ROUNDABOUT THEATRE COMPANY, INC., Appellee.**

**No. 89 Civ. 8569 (MEL).**

United States District Court, S.D. New York.

Sept. 4, 1991.

---

Salomon Green & Ostrow, P.C., New York City (David M. Green, Yann Geron, of counsel), for appellant Michael Fried.

Sanford P. Rosen, New York City, for appellee.

LASKER, District Judge.

Michael Fried, a former co-executive director of debtor Roundabout Theatre Company, Inc. ("RTC"), appeals from the Bankruptcy Court's denial by summary judgment of Fried's claim against RTC for pre- and post-petition wages in the total amount of $143,003.33, with $30,770 representing a general claim for wages accrued before RTC filed for Chapter 11 protection and $112,233.33 a priority post-petition claim.

The Bankruptcy Court granted RTC's summary judgment motion, ruling that Fried's claim was barred under the doctrines of equitable estoppel, judicial estoppel and laches. Because the facts are insufficient to establish those defenses, the Bankruptcy Court's entry of summary judgment is reversed.

## BACKGROUND [1]

RTC filed a petition for Chapter 11 protection on March 30, 1977. On April 7, 1977, the Bankruptcy Court for the Southern District of New York entered an order fixing Fried's salary at $300 per week. On or about December 20, 1977, Fried, on behalf of RTC, filed schedules of liabilities ("Schedules") which he swore reflected all RTC's debts and which did not reflect Fried's general claim for pre-petition wages. The only liability listed as owed to Fried was a $9,833.00 "loan" which he subsequently claimed to be an understated listing of wages due to him. On July 28, 1982, Fried filed an affidavit in anticipation of a confirmation hearing which subsequently was postponed ("Affidavit") in which he represented that all RTC's administrative expenses had been paid and that there

1. All facts referred are taken from the Bankruptcy Court's decision granting summary judgment to RTC and expunging Fried's claim, or from the record of related proceedings where indicated.

were no outstanding obligations except (i) those which were not currently due and (ii) those which were the subject of a bona fide dispute.

Finally, on June 18, 1984, Fried filed his claim for pre- and post-petition wages, which accrued at least in substantial part before his affidavit of July 28, 1982 stating that no such amounts were owed by RTC. Fried alleges that the discrepancy and his failure to file his claim earlier were due to psychological difficulties he experienced.

On September 18, 1985 a hearing to confirm RTC's plan was held before Judge Abram of the Bankruptcy Court. At the hearing, RTC requested a waiver of the deposit requirement as to Fried's claim, specifically representing that it "would not seek any kind of substantive impact or effect upon the claim per se." Transcript of Adjourned Hearing on Confirmation, September 18, 1985 ("Tr."), at 19. At the confirmation hearing, Judge Abram stated her understanding of the ruling RTC and its creditors sought to be that:

> ... if in fact it should prove to be the case that Mr. Fried were successful in pursuing his claims, you would be required to make the payments in order to continue on business and that that is a risk which you and the creditors are aware exists and which this Court can evaluate in considering whether confirmation should go forward.

Tr. at 27. The Court went on to note the need for confirmation of a plan at the advanced stage in the proceedings and the existence of substantial doubts as to the viability of Fried's claim, and confirmed the plan without requiring RTC to make a full deposit on Fried's claim.

Following the Bankruptcy Court's waiver of the deposit requirement and its confirmation of the plan, RTC moved for summary judgment to expunge Fried's claim. That motion, which was made before Judge Blackshear although Judge Abram had conducted the confirmation hearing, was

granted in an opinion dated September 21, 1989 ("Opinion") and by Order dated October 5, 1989 ("Order"). The Bankruptcy Court found that "[t]he Court, Roundabout and Roundabout's creditors relied upon the representations of debt contained in the schedules and Fried's representation in the [July 28, 1982] Fried affidavit with respect to both the promulgation and confirmation of the plan." Opinion at 4. The Court stated that it acted in reliance on Fried's earlier representations when it agreed to waive the deposit requirement on Fried's claim and to confirm RTC's plan. Opinion at 4–5. The Court made no specific finding as to how RTC or its creditors relied on Fried's assertions. It did note Fried's failure to provide a statement outlining contested facts which in his judgment precluded summary judgment, Opinion at 7,[2] and it noted that his claim appeared to be for a rate of pay higher than the $300 per week authorized by the Bankruptcy Court's earlier order. Opinion at 5.

With the foregoing facts established in the record, the Court granted RTC's summary judgment motion on the grounds of equitable estoppel, judicial estoppel, and laches. Opinion at 15.

## DISCUSSION

On appeal we are bound by the Court's factual findings unless they are clearly erroneous, but review its legal conclusions *de novo*. *See Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir.1987).

The Court ruled that Fried's claim was barred by the three separate affirmative defenses of equitable estoppel, judicial estoppel, and laches, any one of which would bar his claim.

### Equitable Estoppel

The equitable estoppel doctrine embodies the principle that one who, by his words or action, represents certain facts to be true

---

**2.** RTC makes much of this failure, arguing that Fried's failure to provide a statement outlining material facts which he believed to be in dispute is deemed an admission of RC's alleged facts as a matter of law. However, as discussed below,

even if the facts contained in the record and asserted by RTC are assumed, they are insufficient to support the court's conclusion that RTC has established its defenses of equitable and judicial estoppel and laches.

and thereby induces another to act to his detriment should thereafter be precluded from denying existence of such facts. *In re Ellison Associates*, 63 B.R. 756, 764 (S.D.N.Y.1983).

Since equitable estoppel is an affirmative defense, RTC has the burden of establishing its elements. *Id.*, 63 Bankr. at 765. Under New York law, to which the parties both refer,

> The party asserting estoppel must show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position.

*Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 430 N.Y.S.2d 179, 187 (4th Dep't 1980). Moreover, to support equitable estoppel the reliance must be reasonable. *See Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F.Supp. 1430, 1452 (S.D.N.Y.1983).

The Court found that it and "Roundabout and Roundabout's creditors relied upon the representations of debt contained in the schedules and Fried's representation in the Fried affidavit with respect to both the promulgation and confirmation of the plan." Opinion at 4, 10. Beyond this conclusory statement, the Court merely quoted Bankruptcy Judge Abram's comments at the confirmation hearing indicating her substantial doubts as to the viability of Fried's claim. *Id.*

██ Despite the Court's finding, however, the record establishes that although Fried's initially-filed schedules and affidavit were inconsistent with his subsequent claim,[3] he filed his claim early enough that RTC did not lack knowledge of the actual facts and could not reasonably have relied on the Schedules or the Affidavit at the plan's confirmation or in negotiations leading to the plan ultimately confirmed. Fried

filed his claim fourteen months before the plan was confirmed. This filing gave RTC ample notice of Fried's changed position while it still was negotiating a plan. Because Fried filed his claim before RTC had fixed its plan for satisfying its creditors' claims, his earlier failure to assert a claim did not cause RTC to rely on those affidavits in taking any irreversible steps, or to change its position prejudicially as a result of such reliance. The Court's ruling to the contrary was clearly erroneous.

This conclusion is reinforced by the record of the Confirmation Hearing, at which RTC's counsel engaged in a prolonged and informed presentation of Fried's claim to the Court, thereby establishing that RTC knew that Fried was pursuing a claim for wages. Tr. at 16–25. Moreover, both Judge Abram and RTC itself stated at the Confirmation Hearing that the waiver of the deposit requirement as to Fried's claim was not an adjudication on the merits of that claim, and that should confirmation be granted both RTC and its creditors specifically understood there to be a risk of Fried's later prevailing on his claim, with the estate liable should he do so. Tr. at 19, 26.

RTC argues that even if it had notice of Fried's claim before the confirmation hearing, the plan was confirmed because the Court, the creditors and RTC itself regarded the risk that Fried would prevail on his claim as insignificant. According to RTC, reliance is to be found in this belief that the claim was unlikely to be allowed. However, as noted above Judge Abram at the time of her confirmation of the plan and RTC in its presentation at the hearing indicated that the confirmation was independent of the merits of the claim and that waiver of the deposit requirement was understood to be accompanied by the creditors' and RTC's assumption of the risk of the claim's ultimate success.

---

**3.** Fried maintains that pursuit of his claim is not inconsistent with his earlier affidavit since his claim now is the subject of a "bona fide dispute." However, the earlier affidavit and schedules did not reflect his claim at the time he presented them and stated explicitly that they reflected all of RTC's obligations other than those not yet due or those subject to bona fide disputes. Because Fried had not presented his claim at the time of the affidavit, there could not have been any dispute concerning it at that time. Thus his earlier statements are at odds with Fried's more recent attempt to collect past wages allegedly due him.

Moreover, at the time of the Confirmation Hearing Fried did not represent to RTC that the likelihood of success of his claim was minimal; he simply had asserted the claim and understood that it was to be determined later. Thus any reliance of the parties on the claim's likelihood of success did not result from any misrepresentation by Fried as to his claim's chances.

Finally, RTC argues that Fried's failure to appear at the confirmation hearing on September 18, 1985 led the parties to believe that he intended to abandon his claim. This argument is undermined by the record of the hearing. During the hearing RTC's attorney addressed Fried's absence and stated:

> I have advised [Mr. Fried's attorney] … that I would not seek any kind of substantive impact or effect upon the claim per se. We'll deal with that at a later date.

Tr. at 19. This representation demonstrates the understanding of all parties at the hearing that Fried's absence in no way indicated his intent to abandon his claim.

In short, RTC failed to show that it or anyone else reasonably relied on Fried's earlier representations or that it did not know of Fried's claim at any critical time in this proceeding, and the Bankruptcy Court's conclusion to the contrary was clearly erroneous.

*Judicial Estoppel*

■ Judicial estoppel is intended to protect the integrity of the judicial process by preventing the intentional assertion of inconsistent positions in different proceedings by one party. *See Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598–99 (6th Cir.1982). The party asserting the affirmative defense of judicial estoppel must show:

> (1) an unequivocal assertion of law or fact by a party in one judicial proceeding, (2) the assertion by that party of an intentionally inconsistent position of law or fact in a subsequent judicial proceeding, (3) in order to mislead the court and

obtain unfair advantage as against another party.

*United States v. Starrett City Associates,* 605 F.Supp. 262, 264 (E.D.N.Y.1985).[4]

■ In the instant case, the Bankruptcy Court identified no evidence of Fried's deliberate intention to misrepresent the debtor's liabilities or, if he intended to make such a misrepresentation, of Fried's intent to mislead the court or obtain unfair advantage against another party, other than his signing the Schedules and the Affidavit and subsequently filing his inconsistent claim. Opinion at 12–13. The Court's apparent inference of the requisite intent on Fried's part is without a clear basis and is contradicted by Fried's Affirmation to the Court dated July 3, 1989 that his failure to present his claim in his earlier Affidavit was due to his depression. The Court's conclusion that RTC had met its standard of proof as to Fried's intent is clearly erroneous.

On appeal RTC now contends that Fried intentionally misrepresented amounts due him as of the Petition date and that he admitted this fact in his affidavit dated June 23, 1989. However, in this affidavit Fried merely states that the schedules were prepared by the debtor's accountant and that he "did not focus upon the inaccuracy of the sum of $9,833.30 as being the sum due me pre-petition until I filed my claim…." *Id.* at ¶ 3. This statement cannot reasonably be construed as an expression of an intent to misrepresent facts and accordingly does not support entry of summary judgment on grounds of judicial estoppel.

*Laches*

■ Under New York law an action is barred by laches when the following elements are present:

> (1) proof of delay in asserting a claim despite the opportunity to do so; (2) lack of knowledge on the defendant's part that a claim would be asserted; and (3)

---

**4.** There is *some* question as to the viability of the judicial estoppel doctrine in the Second Circuit. *See David v. Showtime/Movie Channel, Inc.,* 697 F.Supp. 752, 763 (S.D.N.Y.1988); *but*

*cf. Young v. United States Dept. of Justice,* 882 F.2d 633, 639–40 (2d Cir.1989). Because its application in the instant case does not favor RTC, that question need not be reached.

prejudice to the defendant by the allowance of the claim.

*Rapf v. Suffolk County of New York,* 755 F.2d 282, 292 (2d Cir.1985).

The record contains insufficient support for RTC's claim that it has been prejudiced within the meaning of laches doctrine by Fried's delay in asserting his claim. "In order to show that he has been prejudiced, a defendant must show reliance and change of position resulting from the delay." *Airco Alloys Div., Airco, Inc. v. Niagara Mohawk Power Corp.,* 430 N.Y.S.2d 179, 187 (4th Dept.1980). As has been discussed above, Fried's filing of his claim fourteen months before the confirmation hearing precluded the reasonable reliance of RTC or its creditors on Fried's failure to press his claim earlier, however troubling that failure may be.

Moreover, RTC has not shown and the Court below has not identified any manner in which RTC changed its position because of Fried's delay in filing the claim. RTC decided to seek confirmation of the plan after Fried's claim was filed.

Because RTC has not established prejudice, the Court was clearly erroneous in ruling Fried's claim barred by laches.

### CONCLUSION

Because RTC has not adequately established any of its defenses of equitable or judicial estoppel or laches, the entry of summary judgment expunging Fried's claim is reversed.

It is so ordered.