Bernard J. ROSENSHEIN,
et al., Plaintiffs,

v.

Albert J. KLEBAN, et al., Defendants.

No. 94 Civ. 8483 (WCC).

United States District Court,
S.D. New York.

Feb. 26, 1996.

---

Chazkel & Associates, P.C., East Brunswick, New Jersey (Michael F. Chazkel, Of Counsel), for Plaintiffs and Intervening Plaintiff.

Kleban & Samor, P.C., Southport, Connecticut (Elliot I. Miller, Irve J. Goldman, Of Counsel), for Individual Defendants.

The Law Offices of Peter G. Eikenberry, New York City (Peter G. Eikenberry, Michael Valentine, Of Counsel), for Defendant White Consolidated Industries, Inc.

Robinson Silverman Pearce Aronsohn & Berman, New York City (Rand J. Levin, Of Counsel), for Defendant Chicago Title Insurance Company, Inc.

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs have brought this action to recover the costs of environmental clean-up at a Connecticut property formerly owned by plaintiff Windsor Green Associates ("Windsor Green"). Certain defendants have moved for summary judgment; plaintiffs have cross-moved to amend the complaint. Bullard Square Corporation ("BSC"), the current owner of the property, has made an application to intervene. For the reasons set forth below, defendants' motions are granted in part and denied in part, plaintiffs' motion is denied, and BSC's application is granted.

## BACKGROUND

On December 26, 1986, defendant White Consolidated Industries, Inc. ("White") sold a parcel of property, on which it had formerly manufactured heavy industrial tools, to defendant Alfred J. Kleban. Kleban then assigned the property to Windsor Green. In conjunction with the sale, White agreed to indemnify Windsor Green from liability to third parties for releases of hazardous or toxic substances that occurred on the property prior to the closing date.

On January 12, 1989, the individual defendants,[1] who were each partners in Windsor Green, sold their partnership interests to plaintiff Rosenshein Associates of Hamden, Inc. ("Hamden") and plaintiff Quaker Ridge Wykagyl Associates, Inc. ("Quaker Ridge"). Hamden and Quaker Ridge are corporations wholly owned by plaintiff Bernard J. Rosenshein. Plaintiffs allege that as part of this transaction, the individual defendants agreed to indemnify plaintiffs Hamden and Quaker Ridge for any losses that they might suffer as a result of environmental contamination to the property.

Windsor Green's primary purpose was to develop and operate the property, which was its only major asset, as retail space. Windsor Green obtained substantial construction loans from The Chase Manhattan Bank, N.A. ("Chase") in 1989 and 1990. On March 1, 1990, Windsor Green entered into a contract to develop and sell a portion of the property to Waban, Inc. ("Waban"), to be used as commercial condominiums. During the negotiations for that sale, Waban hired an environmental consultant who uncovered some areas of contamination. Plaintiffs allege that in order to proceed with the sale to Waban, they were obliged to expend substantial sums to perform the clean-up and remediation required by federal and state regulations. Plaintiffs allege that on August 28, 1990, Windsor Green gave written notice to White

---

1. The individual defendants are Albert J. Kleban, William Kokot, Stephen J. Saft, Thomas E. Dardani, Alexander W. Samor, Henry A. Perles, Brian T. Silvestro, Leonard Leader as Trustee for the Saft children, Thomas E. Minoque, Jr., Louis Radler, Peter L. Masonotti, William A. Perrone, Michael J. Daly, Eleanor Levin, and Lucy Fabrizi.

of the facts giving rise to White's liability for indemnification.

On December 6, 1990, Rosenshein filed for bankruptcy under Chapter 11. Quaker Ridge filed for bankruptcy under Chapter 11 on May 26, 1992. On July 16, 1992, Rosenshein filed a disclosure statement that describes the financial condition of various Chapter 11 debtors that he owned, including Quaker Ridge. On August 11, 1992, the bankruptcy court signed an order confirming the debtors' plan of reorganization and consolidating the various debtors. The order also consolidated the debtors with Hamden. It is not clear from the documents currently before this court whether Hamden had also filed for bankruptcy.

Meanwhile, on August 15, 1991, Windsor Green filed for bankruptcy under Chapter 11. Chase was by far its largest creditor, with outstanding balances on the construction loans totalling more than $20,000,000. Windsor Green, as debtor-in-possession, sold the property to BSC, to which Chase had transferred its claims. BSC purchased the property for $10,015,000, which it offset against its claims. On October 15, 1991, the bankruptcy court approved the sale. On November 5, 1993, the bankruptcy court signed an order confirming Windsor Green's plan of reorganization.

Plaintiffs' claims against White and the individual defendants for environmental damage to the property were not listed on the schedules of assets that the debtors were required to file with the bankruptcy court. Furthermore, none of the debtors' disclosure statements referred to plaintiffs' claims. Instead, Windsor Green's disclosure statement affirmatively stated that as of June 28, 1992, its only assets consisted of $25,000 in cash. The disclosure statement filed by Rosenshein and Quaker Ridge on July 16, 1992, stated that Quaker Ridge's interest in Windsor Green had been deemed valueless by July 1992. Exhibit G to that disclosure statement listed a number of assets that Rosenshein was retaining but did not mention any claims for environmental damage to the property. Both disclosure statements attributed the failure of the various Rosenshein enterprises

to the general economic downturn, credit problems and construction cost overruns.

Plaintiffs initiated this action on November 22, 1994. They assert claims against the individual defendants and against White for negligence, ultrahazardous activity, reimbursement for clean-up costs and indemnification. Plaintiffs also assert a claim against defendant Chicago Title Company ("Chicago Title") for failure to pay amounts due under a title insurance policy that Chicago Title issued on the property at the time that the individual defendants sold it to Hamden and Quaker Ridge.

The individual defendants have moved for summary judgment dismissing plaintiffs' claims. White has made a motion to dismiss or, in the alternative, a motion for summary judgment. Because White has submitted affidavits and documentary evidence to the court in connection with its motion, we will treat its motion as a motion for summary judgment. See Fed.R.Civ.P. 12(b); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (1990). Chicago Title, at the court's request, delayed filing a summary judgment motion until we decided the instant motion. In response to the motions of White and the individual defendants, plaintiffs cross-moved to amend the complaint, and BSC applied for leave to intervene.

## DISCUSSION

### I. Defendants' Motions for Summary Judgment

Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has explained that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No such disputes exist in this case.

As a preliminary matter, we note that defendants argue that Windsor Green is the only entity bringing claims in this action.

They contend that Quaker Ridge, Hamden and Rosenshein assert the claims at issue here only to the extent that they are "doing business as" Windsor Green. Although the caption of this action gives that impression, we cannot agree. The complaint alleges that all four plaintiffs have incurred the expense of cleaning up the property and that all four plaintiffs seek to recover under each cause of action. Clearly, only Windsor Green may assert the indemnification claim against White and the claim against Chicago Title, as plaintiffs allege that Windsor Green signed the agreements that give rise to those claims. *See* Complaint, at ¶ 12. Likewise, only Quaker Ridge and Hamden may assert claims for indemnification against the individual defendants, as Quaker Ridge and Hamden signed the purchase agreement that allegedly contains the relevant indemnification provisions.[2] *See* Exhibit 3, attached to Affidavit of Peter G. Eikenberry, dated June 26, 1995. The instant motions are not addressed to the merits, or lack thereof, of the remaining four claims, which are asserted by all four plaintiffs against White and the individual defendants. We express no opinion at this juncture on whether any or all of the plaintiffs have stated valid claims for negligence, ultrahazardous activity or violations of various Connecticut environmental statutes. It is sufficient for our purposes to note that Windsor Green is not the only entity asserting claims in this action.

Plaintiffs concede that Windsor Green, Quaker Ridge and Rosenshein did not disclose any claims for environmental damage to the property at any point in their respective bankruptcy proceedings. It is not clear, however, whether Hamden ever filed for bankruptcy. *Compare* Rosenshein's Disclosure Statement, at 10–11, attached as Exhibit 5 to Eikenberry Aff. (as of July 16, 1992, Hamden "is not a Debtor before this Court") *with* Order Confirming Debtors' Third · Amended Joint Consolidated Plan of Reorganization, dated August 11, 1992, at 5, attached as Exhibit 7 to Eikenberry Aff. (substantively consolidating debtors, including Rosenshein and Quaker Ridge, with Hamden). If it did, the parties have submitted no

documents from which we can determine whether Hamden disclosed any claims that it may have. This factual distinction requires us to evaluate Hamden's claims separately from those asserted by Windsor Green, Quaker Ridge and Rosenshein.

### A. Windsor Green, Quaker Ridge and Rosenshein's Claims

■ When a debtor files for bankruptcy, an estate is created that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The debtor must file a financial statement with the bankruptcy court, including a schedule of assets. *See* 11 U.S.C. § 521(1). The estate's assets include all causes of action that can be brought by the debtor. *See Seward v. Devine*, 888 F.2d 957, 963 (2d Cir.1989). Defendants contend that because Windsor Green, Quaker Ridge and Rosenshein failed to disclose the claims that they assert in this case as assets in their bankruptcy proceedings, 1) they lack standing to pursue the claims and 2) the claims are barred by judicial estoppel.

■ We will address defendants' standing argument first. Ordinarily, the debtor may recover property of the estate, such as a cause of action, in only two ways. First, upon confirmation of a plan of reorganization, all of the property of the estate vests in the debtor, although only property that was "dealt with by the plan is free and clear of all claims and interests of creditors...." 11 U.S.C. § 1141(b)–(c). Because undisclosed claims are not dealt with by the plan, they do not revert to the debtor free of the claims of creditors. *See Pako Corp. v. Citytrust*, 109 B.R. 368, 376 (D.Minn.1989).

■ Second, property may be removed from the estate if it is abandoned to the debtor. *See* 11 U.S.C. § 554. Property that is scheduled pursuant to 11 U.S.C. § 521(1), but not administered by the plan, is abandoned to the debtor by operation of law at the close of the bankruptcy case. *See* 11 U.S.C. § 554(c). By contrast, property that

---

**2.** The copy of the purchase agreement submitted to the court is not complete and does not include the indemnification provisions alleged in the complaint.

is not formally scheduled is not abandoned and therefore remains part of the estate. *See* 11 U.S.C. § 554(d); *Vreugdenhill v. Navistar Int'l Trans. Corp.*, 950 F.2d 524, 526 (8th Cir.1991); *In re Drexel Burnham Lambert Group, Inc.*, 160 B.R. 508, 514 (S.D.N.Y. 1993); *Robinson v. J.A. Wiertel Construction*, 185 A.D.2d 664, 586 N.Y.S.2d 59, 60 (1992). Courts have held that because an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed. *See Drexel*, 160 B.R. at 514; *Robinson*, 586 N.Y.S.2d at 59–60.[3]

■ This result appears to be in some tension with the plain meaning of section 1141(b), under which *all* property of the estate is vested in the debtor upon confirmation of a plan of reorganization. We need not confront this question at this time, however, as it is clear that undisclosed claims do not revert to the debtor free of the claims of creditors. Numerous courts have permitted the pursuit of undisclosed claims after confirmation in order to prevent an alleged wrongdoer from obtaining a windfall because the debtor failed to schedule its claims and to ensure that the creditors benefit from any recovery. *See, e.g., Greenheart Durawoods, Inc. v. PHF Int'l Corp.*, 1994 WL 652434, at *5 (S.D.N.Y. Nov. 18, 1994); *In re Auto West*, 43 B.R. 761, 764 (D.Utah 1984); *see also Pako*, 109 B.R. at 374–75 (*dictum*). The courts are in agreement that creditors, trustees and debtors in possession may pursue undisclosed claims following confirmation of a plan of reorganization by methods that ensure that the creditors receive the benefit of any recovery. *See, e.g., Miller v. Shallowford Community Hosp., Inc.*, 767 F.2d 1556, 1559, 1561 (11th Cir.1985) (affirming ruling that proceeds of undisclosed claim were part of debtor's estate and were available to creditors following petition to reopen bankruptcy); *Greenheart*, 1994 WL 652434, at *5 (staying action to permit debtor to petition bankruptcy court to reopen bankruptcy); *Auto West*, 43 B.R. at 763–65 (affirming bankruptcy court's grant of debtor's motion to appoint special counsel to pursue undisclosed claims for the benefit of creditors). Debtors may not, however, pursue undisclosed claims for their own benefit. *See Drexel*, 160 B.R. at 514; *Pako*, 109 B.R. at 376; *Robinson*, 586 N.Y.S.2d at 59–60.

■ Windsor Green, Quaker Ridge and Rosenshein therefore lack standing to pursue undisclosed claims against defendants for their own benefit, as they seek to do in this action. Instead, they should pursue these claims by seeking to reopen the appropriate bankruptcy proceeding so that their creditors may benefit from any recovery. No such application has been made, nor have plaintiffs requested a stay of this action to permit them to petition the bankruptcy court. Dismissal of Windsor Green, Quaker Ridge and Rosenshein's claims is therefore appropriate.[4]

---

3. Admittedly, each of the foregoing cases concerns the debtor's failure to schedule causes of action in a Chapter 7 proceeding. The principle enunciated in those cases is, however, equally pertinent in Chapter 11 cases in which the debtor remains in possession of the assets in question. Indeed, the case for its application may be more compelling:

> The dangers resulting from the concealment of assets are greater when the debtor remains in possession than in cases in which a third party acts as trustee. An outside trustee is a separate mechanism for discovering unlisted claims or assets. If a debtor in possession were permitted to omit claims in bankruptcy and later assert title to them, there might be an inducement to do so, to the prejudice of creditors' interests.

*Stein v. United Artists Corp.*, 691 F.2d 885, 892 (9th Cir.1982) (Chapter 11; former bankruptcy act); *see also Pako*, 109 B.R. at 375–76 (discussing application of reasoning in *Stein* to Chapter 11 debtor's undisclosed claims under current bankruptcy code); *Dynamics Corp. of America v. Marine Midland Bank–New York*, 69 N.Y.2d 191, 513 N.Y.S.2d 91, 94, 505 N.E.2d 601, 604 (1987) (Chapter 11; former bankruptcy act).

4. Rosenshein contends that he retained the claims that he asserts here under the general retention clause in his reorganization plan. This argument is not persuasive. The general retention clause provided that after confirmation of his reorganization plan, Rosenshein would retain the right to enforce any cause of action that became property of his bankruptcy estate on December 6, 1990, when he filed for bankruptcy. *See* Debtors' Third Amended Joint Consolidated Plan of Reorganization at § 12.6, attached as Exhibit B to Affidavit of Bernard J. Rosenshein, dated Aug. 8, 1995. Rosenshein may not, however, rely on a general retention clause to pre-

Defendants are also entitled to summary judgment on the ground that Windsor Green, Quaker Ridge and Rosenshein are barred by judicial estoppel from asserting claims that they failed to disclose in bankruptcy. "Judicial estoppel lies when a party, after assuming a certain position in a legal proceeding, attempts to assume a contrary position." *In re Hoffman*, 99 B.R. 929, 935 (N.D.Iowa 1989). "Judicial estoppel is invoked in these circumstances to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *In re Galerie Des Monnaies of Geneva, Ltd.*, 62 B.R. 224, 226 (S.D.N.Y.1986) (internal quotation omitted). A number of courts have invoked judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy. *See Payless Wholesale Distributors, Inc. v. Alberto Culver, Inc.*, 989 F.2d 570, 571–72 (1st Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419–20 (3rd Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *Hoffman*, 99 B.R. at 935–36; *Pako*, 109 B.R. at 376–77; *In re Galerie Des Monnaies of Geneva, Ltd.*, 55 B.R. 253, 259–60 (Bankr.S.D.N.Y.1985), *aff'd*, 62 B.R. 224 (S.D.N.Y.1986).

The rationale for these decisions is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete. *See Hoffman*, 99 B.R. at 935–36.

We note that two courts in our district have declined to apply judicial estoppel to bar undisclosed claims. Those courts have expressed some doubts as to the viability of the doctrine of judicial estoppel in the Second Circuit. *See In re Roundabout Theatre Co.*, 131 B.R. 14, 18 n. 4 (S.D.N.Y.1991); *Reciprocal Merchandising Servs., Inc. v. All Advertising Assocs., Inc.*, 163 B.R. 689, 696 (S.D.N.Y.1994). With all due respect, we are not convinced that those reservations are warranted. While judicial estoppel should be applied with care so as not to impinge on a party's ability to plead alternative and inconsistent theories of its case, the Second Circuit has recognized the applicability of the doctrine to situations in which the court must protect the integrity of the judicial system. *See Bates v. Long Island Railroad Co.*, 997 F.2d 1028, 1037–38 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). The two elements that the party seeking the application of judicial estoppel must establish are: "[1] the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and [2] the prior inconsistent position must have been adopted by the court in some manner." *Id.*, at 1038.

In this case, Windsor Green, Quaker Ridge and Rosenshein's ability to plead alternative theories of their case is not implicated. *See Pako*, 109 B.R. at 376; *Hoffman*, 99 B.R. at 935 n. 3. Each of these parties had an affirmative obligation under 11 U.S.C. § 521(1) to disclose to the bankruptcy court all of the assets that belonged to their bankruptcy estates. *See Pako*, 109 B.R. at 376. Windsor Green, Quaker Ridge and Rosenshein nevertheless failed to inform the court of their claims for the allegedly substantial sums that they expended cleaning up and remediating the property, although the allegations in the complaint reveal that they were aware of the circumstances underlying those claims before they filed for bankruptcy.[5] The bankruptcy court approved their

---

serve undisclosed causes of action known to him when he filed for bankruptcy. *See Westland Oil Dev. Corp. v. MCorp Management Solutions, Inc.*, 157 B.R. 100, 103 (S.D.Tex.1993).

**5.** Plaintiffs concede that they knew of the alleged environmental contamination that gives rise to these claims by the spring of 1990 and that they gave written notice to White of its liability for

plans of reorganization and discharged their debts on the basis of their incomplete disclosure of assets, thereby adopting their position. Windsor Green, Quaker Ridge and Rosenshein now seek to assert the contrary position that they have claims against White, Chicago Title and the individual defendants. This is precisely the sort of "about-face" that undermines the integrity of the bankruptcy process. Therefore, the doctrine of judicial estoppel provides an alternative basis on which to grant summary judgment dismissing Windsor Green, Quaker Ridge and Rosenshein's claims.

The *Roundabout* and *Reciprocal Merchandising* decisions do not persuade us otherwise. Both decisions declined to apply judicial estoppel on the grounds that the defendants had failed to establish that the plaintiffs intended to misrepresent facts and to mislead the bankruptcy court.[6] *See Reciprocal Merchandising*, 163 B.R. at 697; *Roundabout*, 131 B.R. at 18. The standard established by the Second Circuit for the application of judicial estoppel makes no mention of intent, however. Furthermore, to the extent that intent may be a relevant consideration, we believe that we may infer an intent to mislead the bankruptcy court from Windsor Green, Quaker Ridge and Rosenshein's knowing nondisclosure of the claims. Plaintiffs have offered no other explanation for why the claims were not disclosed.

Accordingly, we grant summary judgment dismissing the claims brought by plaintiffs Windsor Green, Quaker Ridge and Rosenshein. Because Windsor Green is the only plaintiff asserting a claim against defendant Chicago Title, it is hereby dismissed from this case.

---

indemnification on August 28, 1990. *See* Complaint, at ¶¶ 16–20. Plaintiffs were therefore indisputably aware of the facts underlying potential claims for environmental damage at the time that Rosenshein, Windsor Green and Quaker Ridge filed their bankruptcy petitions on December 6, 1990, August 15, 1991, and May 26, 1992, respectively.

**6.** The *Reciprocal Merchandising* court also found that despite the lack of explicit disclosure of the debtor's claims against defendants, the debtor's

**B. Hamden's Claims**

The parties have not provided us with any documents from which we can determine whether Hamden filed for bankruptcy, and if so, whether Hamden disclosed its claims against the individual defendants. Furthermore, because the defendants argued unsuccessfully that Hamden's claims related only to its interest as a partner in Windsor Green, their memoranda of law did not address the claims asserted by Hamden in its own right. We therefore deny the individual defendants and White's motions for summary judgment on Hamden's claims.

**II. Plaintiffs' Motion to Amend**

Plaintiffs seek to keep the claims asserted by Windsor Green alive by requesting leave to amend the complaint. Under Fed.R.Civ.P. 15(a), leave to amend the complaint "shall be freely given when justice so requires." Leave to amend need not be given, however, if it would be futile for the court to permit amendment. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). It is, of course, futile to permit amendment where the proposed amendment does not state a claim for relief. *See Albany Insur. Co. v. Esses*, 831 F.2d 41, 45 (2d Cir.1987), *overruled on other grounds, United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 1994 W.L. 324018, at *2 (S.D.N.Y. July 6, 1994).

Plaintiffs seek leave to amend the complaint to include allegations that Windsor Green's claims were transferred first to BSC when it acquired the property on October 15, 1991, and then assigned to Rosenshein. Plaintiffs contend that if we permit the proposed amendment, Rosenshein may assert Windsor Green's claims in this action. Plain-

reference to money that it had expended for defendants' benefit was sufficient to put its creditors and the court on notice of its claims against the defendants. *See Reciprocal Merchandising*, 163 B.R. at 697. There is clearly nothing in Windsor Green, Quaker Ridge or Rosenshein's disclosure statements that could be construed to put creditors or the court on notice that those debtors had claims for environmental damage to the property.

tiffs' argument fails at the outset because they have not alleged a valid assignment of claims from Windsor Green to BSC. Under Section 363 of the Bankruptcy Code, if the sale of an asset of the debtor is not in the "ordinary course of business," the debtor in possession may sell the asset only after notice and a hearing. *See* 11 U.S.C. §§ 363(b)(1); 1107(a). Clearly, the transfer of allegedly substantial claims for environmental damage to the property was not performed in the ordinary course of Windsor Green's business. As the claims at issue here were never disclosed in any of Windsor Green's bankruptcy filings, any transfer of these claims that may have occurred could not have been approved by the bankruptcy court.

The proposed amended complaint does not allege facts, nor have plaintiffs produced documentary evidence, from which a contrary conclusion might be drawn. Although plaintiffs state conclusorily that Windsor Green transferred the claims to BSC when BSC acquired the property, they do not allege that the bankruptcy court approved any transfer of claims. *See* Proposed Amended Complaint, at ¶ 27, attached as Exhibit A to Affidavit of Michael F. Chazkel, dated August 8, 1995. Furthermore, the relevant documents—Windsor Green's application to the bankruptcy court for approval of the sale of the property, the deed in lieu of foreclosure that transferred the property to BSC, and the bankruptcy court's order approving the transfer—are all notably absent from plaintiffs' papers.[7]

Accordingly, we find that it would be futile to permit plaintiffs to make the proposed amendments to the complaint, because it appears that the amended complaint would not allege a valid assignment of Windsor Green's claims.

## III. BSC's Application to Intervene

 BSC has applied to intervene in this action under Fed.R.Civ.P. 24(a)(2) and 24(b)(2). Under Fed.R.Civ.P. 24(a)(2), the court shall permit a party to intervene, upon timely application, "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties." The applicant must satisfy each of these criteria in order to intervene as of right. *See Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922 F.2d 92, 96 (2d Cir.1990).

The reasoning behind BSC's application is not clearly articulated in its memorandum of law. As we understand its argument, BSC seeks leave to intervene in order to assert claims for the expenses that it has incurred in cleaning up and remediating the property, presumably since it acquired the property on October 15, 1991. *See* Proposed Amended Complaint, at ¶¶ 23–25. The only impairment of BSC's interests that might result if it were required to pursue those claims elsewhere is the additional expense of bringing a separate action, which is not a sufficient basis for finding that BSC is entitled to intervene as of right. *See* 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1908, at 311–12 (1986).

 We reach a different result, however, with respect to BSC's application to intervene under Fed.R.Civ.P. 24(b)(2). Under that provision, the court may permit a party to intervene, upon timely application, when the applicant's claim and the main action have a question of law or fact in common. The district court has broad discretion in resolving applications for permissive intervention. *See New York News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir.1992). The claims that BSC seeks to assert clearly have questions of law and fact in common with those asserted by Hamden. *See* Complaint, at ¶¶ 21–23. Permitting BSC to intervene will not unduly prejudice defendants or delay this case, as discovery is in the relatively early stages and Hamden and BSC should be seek-

7. This court has been informed by the Clerk's Office of the Bankruptcy Court in White Plains that the court file for Windsor Green's bankrupt-cy is missing. Therefore, we have been unable to obtain these documents.

ing similar information from defendants and advancing similar legal theories. Therefore, we will permit BSC to intervene under Fed. R.Civ.P. 24(b)(2) to assert claims based on expenses that it has incurred in cleaning up the property.

### CONCLUSION

For the foregoing reasons, the summary judgment motions of White and the individual defendants are granted in part and denied in part. The claims asserted by Windsor Green, Quaker Ridge and Rosenshein are dismissed. Because summary judgment is granted dismissing Windsor Green's claims, defendant Chicago Title is dismissed from this action. Defendants' motions for summary judgment are denied as to the claims asserted by Hamden. Plaintiffs' motion to amend the complaint is denied. BSC's application to intervene is granted. Plaintiffs may file an amended complaint that reflects BSC's intervention within 20 days of the date of this order.

SO ORDERED.