**In re The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Debtors.**

**Henry G. MINDLIN, Appellant,**

**v.**

**The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Appellees.**

Bankruptcy No. 90 B 10421 (FGC). Nos. Civ. 90–6954 (MP), 93 Civ. 4576 (MP).

United States District Court, S.D. New York.

Oct. 29, 1993.

Leonard Steiner, Steiner & Libo, Beverly Hills, CA, for appellant Henry G. Mindlin.

Peter Gruenberger, John H. Bae, Weil, Gotshal & Manges, New York City, for appellee DBL Liquidating Trust.

## OPINION

MILTON POLLACK, Senior District Judge:

Appellant, adjudicated personally bankrupt in involuntary proceedings, seeks recovery on claims which he had not disclosed to his creditors in his bankruptcy proceedings. After his discharge from bankruptcy, Appellant instituted arbitration proceedings on a claim which was disclosed in the bankruptcy proceeding. Over Appellee's objection, Appellant was allowed to expand his submission to

510

assert claims he had not disclosed as assets. An Award thereon was made by the arbitration panel. Appellant then filed a proof of claim in the Drexel bankruptcy proceedings based on the total arbitration Award. The state court subsequently vacated the Award in a non-final order. On motions for summary judgment filed by both parties with respect to Appellant's proof of claim, the Bankruptcy Court (Conrad, B.J.) dismissed the portion of Appellant's proof of claim based on claims undisclosed in Appellant's bankruptcy, holding that by operation of law, unscheduled claims were forfeited by the Appellant and belonged to his creditors and the trustee. 11 U.S.C. § 554 (1993).

Affirmed.

## BACKGROUND

Appellant Henry G. Mindlin ("Mindlin"), a registered representative of Drexel Burnham Lambert Group Inc. ("Drexel"), a brokerage firm, was dismissed in June of 1985 on the grounds that he had allegedly made unauthorized and undisclosed loans from accounts of Drexel clients to the account of a co-conspirator. He was also charged with making misleading statements to a Drexel client, Jan Koorn, who subsequently sued Mindlin and Drexel for damages in California Superior Court. Koorn's suit against Mindlin was stayed when an involuntary bankruptcy petition was filed against Mindlin. Koorn's case against Drexel continued, however, and Drexel was held liable to Koorn for Mindlin's misconduct. A judgment of $2,256,750, including $2,000,000 in punitive damages, was entered against Drexel.

While the *Koorn* suit was pending, Mindlin's personal bankruptcy proceeded in the Central District of California. Pursuant to Section 521 of the Bankruptcy Code, Mindlin was required to disclose in his bankruptcy schedules all property and claims owned by him, including tangible property of every description, liquidated debts, contingent and unliquidated claims including counterclaims of Mindlin, and any "property of any kind not otherwise scheduled." The only property here relevant that Mindlin scheduled was 200 shares of Drexel Group Stock held by Drexel, purchased by Mindlin under an employee stock ownership plan. On May 26, 1988, Mindlin was discharged from bankruptcy.

Nine months after discharge from bankruptcy, on February 10, 1989, Mindlin filed for arbitration against Drexel, seeking to recover his Drexel Group stock mentioned above (the "Stock Claim"). Drexel had placed the stock in a Group account pending a determination of Mindlin's liability over to Drexel for contribution or indemnification on the Koorn judgment. On the first day of arbitration (April 19, 1990), over Drexel's *objection,* Mindlin sought to expand his arbitration submission to add "Additional Claims" against Drexel for alleged lost earnings, wrongful termination, untimely filing of termination forms, and failure to provide Mindlin with posting books and other documents concerning Mindlin's former Drexel customers. Drexel's counsel requested time to research and respond to those Additional Claims, which was denied, and the Additional Claims were added to the submission. On May 9, 1990, the panel awarded Mindlin $351,656 in compensatory damages and $100,000 in punitive damages on all claims.

On May 21, 1990, Drexel filed a petition in California State Superior Court to vacate the arbitration Award on the grounds that the arbitrators had exceeded their powers, had improperly considered claims forfeited by Mindlin in his bankruptcy, and had denied Drexel an opportunity to research and respond to the expansion of the submission.

On May 30, 1990, Drexel filed a petition for relief under Chapter 11 of the Bankruptcy Code. This effectively stayed all matters pertaining to Mindlin and Drexel, except for the filing of claims in the Drexel bankruptcy.

Mindlin filed proof of claim in the Drexel bankruptcy on August 23, 1990 for the arbitration Award plus interest, in the amount of $461,964.38 ("Claim No. 549"). The proof of claim remained pending until two years later, after a plan of reorganization was approved. On May 21, 1992, Mindlin moved in the Bankruptcy Court for summary judgment on his proof of claim, which was denied on September 3, 1992.

Thereupon, Drexel served its Petition to Vacate the arbitration Award, on the grounds

*inter alia* that the arbitrators had exceeded their powers in entertaining claims which Mindlin had forfeited by omitting them from his schedules in personal bankruptcy. Acting on that petition, on November 23, 1992, the California Superior Court vacated the arbitration Award. Mindlin has appealed that ruling.

Drexel then moved in the Bankruptcy Court for partial summary judgment on Mindlin's unscheduled Additional Claims. On April 9, 1993, the Bankruptcy Court granted the motion, excising all the Additional Claims from Mindlin's proof of claim. This reduced Mindlin's proof of claim to $18,-600 (the value of the Stock Claim). Final judgment on the Additional Claims was entered on May 12, 1993.

Mindlin now appeals three rulings of the Bankruptcy Court: (1) the September 3, 1992 Order denying Mindlin's motion for summary judgment on the totality of the arbitration Award; (2) the April 9, 1993 Order excising the claims unscheduled by Mindlin in his bankruptcy and reducing the proof of claim to $18,600; and (3) the May 12, 1993 Order directing entry of final judgment on the Additional Claims.

## DISCUSSION

Appellant advances three discrete contentions on appeal: (1) the Bankruptcy Court erred in denying Appellant's motion for summary judgment on the arbitration Award claim; (2) this Court lacks jurisdiction to review the Bankruptcy Court's grant of Drexel's motion for partial summary judgment; and (3) the Bankruptcy Court erred in granting Drexel's motion for partial summary judgment on the unscheduled and forfeited claims.

### I.

 Mindlin asserts that, in denying his motion for summary judgment, the Bankruptcy Court's consideration of the pending petition to vacate the arbitration Award was erroneous because Drexel had failed to timely serve Mindlin with its petition to vacate. Under California law, a party has 100 days from the service of an arbitration Award in which to file a petition to vacate the Award

and to serve that petition on his opponent. Cal.Civ.Proc.Code § 1288 (West 1993). Drexel filed the petition to vacate with the California state court 11 days after the arbitration panel's decision; it did not serve Mindlin with the petition. On May 30, 1990, however, Drexel filed for bankruptcy, thereby triggering an automatic stay on all pending proceedings against Drexel pursuant to 11 U.S.C. § 362, in effect suspending the 100–day requirement.

Appellant contends that the automatic stay did not relieve Drexel of its duty to serve its Petition to Vacate within 100 days. By its terms, Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as a stay of "actions or proceedings against the debtor." Appellant contends, however, that Drexel's Petition to Vacate was a separate action from the arbitration proceeding, brought *by*, not against, the debtors, so that Section 362 did not stay Drexel's duty to serve Mindlin with the Petition.

 It is clear that Section 362 acts to stay arbitration proceedings brought against the debtor. *See In re Chas. P. Young Co.,* 111 B.R. 410, 417 (Bankr.S.D.N.Y.1990). Furthermore, an appeal of a *judicial* decision is a continuation of the original proceeding for Section 362 purposes. *See Teachers Ins. & Annuity Ass'n of Am. v. Butler,* 803 F.2d 61, 65 (2d Cir.1986). Moreover, the status of the debtor on appeal—i.e., whether he appears as appellant or appellee in the (disputably) stayed litigation—is irrelevant to the applicability of Section 362 so long as suit was *originally* brought against the debtor. *See Barbier v. Shearson Lehman Hutton,* 943 F.2d 249, 250 (2d Cir.1991) (Section 362 automatically stays appeal of a district court order confirming an arbitration award, regardless of the fact that the debtor was the appellant); *Ostano Commerzanstalt v. Telewide Systems, Inc.,* 790 F.2d 206, 207 (2d Cir.1986) ("whether an action is 'against the debtor' is determined by examining the debtor's status at the time the proceedings were initiated, and not by looking to which party has appealed"). These decisions compel the

conclusion that Section 362 stays petitions to vacate arbitration awards.

■ Appellant seeks to distinguish between an appeal of a lower court decision and a petition to vacate an arbitration award. He points out that a petition to vacate requires notice and the payment of a filing fee. The distinctions are specious; notice to the opponent and the payment of a filing fee are also requirements of appeals of judicial decisions. More importantly, Appellant's proffered distinction is supported neither by the language of Section 362 nor by the logic and policy underlying the automatic stay provision.[1] To distinguish arbitration proceedings from all other proceedings in this context would, as commented by the Bankruptcy Court, "elevate form over substance." *Hearing Transcript* (September 3, 1992) at 33. In the instant case, Drexel's petition to vacate was the only way to appeal the arbitration panel's Award. Because the petition to vacate was simply the next procedural step in the arbitration proceeding initiated by Appellant, it did not constitute a distinct proceeding for Section 362 purposes. Drexel's pending Petition to Vacate was thus properly considered by the Bankruptcy Court in denying Mindlin's motion.

Summary judgment on the arbitration Award was also precluded by the existence of genuine issues of material fact as to whether Drexel was entitled to an offset against Mindlin's claim, based on Drexel's liability to Mr. Koorn. Appellant maintains that as a matter of law, Drexel is not entitled to such an offset because California law denies contribution or indemnification in favor of a tortfeasor who has committed intentional wrongdoing, *see* Cal.Civ.Pro.Code § 875(d) (West 1993), and that Drexel must necessarily be considered an intentional tortfeasor in light of the fact that Koorn's prepetition judgment against Drexel under California law had included a punitive damages element.

■■ Appellant's argument is unavailing. No authority is offered for the proposition that the imposition of punitive damages against Drexel necessarily implies intentionally tortious conduct by *Drexel* (as opposed to Mindlin). Indeed, under California law, punitive damages may be awarded against a corporation whose employees have committed intentional torts for a number of reasons, including if "(a) the principal authorized the doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the employer or a manager of the employer ratified or approved the act." *Agarwal v. Johnson*, 25 Cal.3d 932, 950, 160 Cal.Rptr. 141, 603 P.2d 58 (1979). Punitive damages *could* have been awarded against Drexel in the Koorn suit, even if Drexel had not committed an intentional tort, if it were held that Drexel was reckless in its hiring of Mindlin or if Mindlin had simply been employed in a managerial capacity. The award of punitive damages against Drexel does not necessarily imply intentional misconduct by Drexel that would disqualify it from seeking indemnification from Mindlin. Consequently, as the Bankruptcy Court found, there *was* a genuine issue of fact as to whether Drexel was entitled to indemnification or contribution from Mindlin. Summary judgment was properly denied to Mindlin.

## II.

Appellant challenges the jurisdiction of this Court to review the Bankruptcy Court's grant of partial summary judgment in Appel-

---

**1.** As explained in the House Report accompanying the Bankruptcy Reform Act of 1978:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions.... The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296–6297 (cited in *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446 (3d Cir.1982)). It is for these reasons that Congress sought to subject not only litigation in trial courts, but also pending appeals of lower court judgments and pending arbitrations to automatic stays.

lee's favor. The jurisdiction of district courts to hear bankruptcy appeals is governed by 28 U.S.C. § 158, which states in pertinent part:

The district courts of the United States shall have jurisdiction to hear appeals from *final judgments, orders, and decrees,* and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges.

28 U.S.C. § 158(a) (emphasis added). Appellant contends that the Supplemental Order issued by Bankruptcy Judge Conrad is not a "final order."

F.R.C.P. 54(b), made applicable to bankruptcy court proceedings pursuant to Bankruptcy Rule 7054 states:

When more than one claim is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties....

Appellant acknowledges that Judge Conrad *did* expressly direct entry and did make the requisite determination that there was no just reason for delay, but contends that because the Supplemental Order disposed of only a portion of Mindlin's Claim No. 549, while preserving the Stock Claim, it fails to qualify as a final order.

■ As a preliminary matter, Appellant has in fact waived any objection to jurisdiction by failing to raise this issue in his Notice of Appeal or his Statement of Issues to be Presented on Appeal. Moreover, his argument is substantively unavailing.

■ For an order to be "final" for Rule 54 purposes, it "must be 'final' in the sense that it is 'an ultimate disposition of *an individual claim* entered in the course of a multiple claims action.' " *Curtiss–Wright Corp.*

*v. General Electric Co.,* 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980) (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)) (emphasis added). The complete disposition of a single claim qualifies as a final order regardless of whether other claims asserted by the same party remain.

■ In this case, the Supplemental Order of the Bankruptcy Court has made the requisite ultimate disposition of Mindlin's Additional Claims, retaining for future decision only the Stock Claim. No issues tangential to Mindlin's Additional Claims remain to be decided. Appellant's contention that the expunged claims are in fact tangential to the retained Stock Claim in that they all derive from "a single course of conduct by Drexel after Mindlin's termination to deprive him of the rights and benefits of his employment," *Reply Br. for Claimant–Appellant Mindlin,* at 4, is untenable. "[T]he test of multiple claims [is] 'whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced.' " *Acha v. Beame,* 570 F.2d 57, 62 (2d Cir.1978) (quoting *Rieser v. Baltimore & Ohio RR Co.,* 224 F.2d 198 (2d Cir.1955)). In the instant case, the underlying factual bases of the expunged claims were sufficiently distinct from those of the Stock Claim to merit separate disposition. *See Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445, 452, 76 S.Ct. 904, 908–09, 100 L.Ed. 1311 (1956) (for finality purposes a single course of employment may give rise to different claims); *Dyer v. MacDougal,* 201 F.2d 265, 267 (2d Cir.1952) (same). Thus, the Bankruptcy Court's Supplemental Order directing entry of judgment as to the Additional Claims qualifies under Rule 54 as a "final order," which vests jurisdiction in this Court to review the Bankruptcy Court's grant of Drexel's motion for summary judgment.

### III.

■ The final issue before this Court is whether the Bankruptcy Court erroneously

**514**

granted partial summary judgment to Drexel.[2] Summary judgment was merited in this case as Appellant lacks ownership and standing to assert any of the Additional Claims that he seeks to advance. Having concealed these claims from his creditors in his own bankruptcy, he is precluded from asserting them now, five years after his discharge from bankruptcy.

All of the Additional Claims arose from events that occurred before the discharge of Mindlin's bankruptcy in May of 1988. They thus rightfully belonged to to his estate. Mindlin concedes that he failed to list the Additional Claims on his Schedule of Assets, notwithstanding the explicit requirement on the Schedule that he "include all property of the debtor." Never alerted to the existence of these potential claims, Mindlin's estate did not prosecute them and the Bar Date passed.

■ By operation of 11 U.S.C. § 554(c) and (d), any asset not scheduled pursuant to 11 U.S.C. § 521(1) remains property of the bankrupt estate, and the debtor loses all rights to enforce it in his own name. *See Vreugdenhill v. Navistar Int'l Transportation Co.*, 950 F.2d 524, 526 (8th Cir.1991) (Chapter 7 debtor who failed to schedule potential claim cannot prosecute the claim after emerging from bankruptcy); *Collier on Bankruptcy* (15th ed. 1992) at ¶ 554.03. Indeed, in oral argument, Mindlin acknowledged that the Additional Claims belonged, not to him, but to the bankruptcy trustee.[3] Yet, in clear contradiction to the law, Mindlin sought to assert such unscheduled Additional Claims in the arbitration proceeding. He attempts to do so again in this bankruptcy

and obtained an improper Award thereon. Appellant cannot be allowed to defraud his creditors by consciously omitting reference to these claims in his own bankruptcy, and then, upon emerging from bankruptcy, attempting to reclaim them. Because Mindlin lacks ownership of and standing to pursue the Additional Claims, the Bankruptcy Court appropriately granted summary judgment thereon in favor of Drexel.

In light of the summary judgment, the Bankruptcy Court correctly reduced Mindlin's proof of claim to $18,600, the value of the retained Stock Claim. There was more than sufficient admissible evidence to warrant the Bankruptcy Court's selection of this figure: Mindlin possessed 200 shares of Drexel Group stock, each of which was worth $93. The validity of the Stock Claim issue is not before this Court on this appeal.

Accordingly, the Bankruptcy Court's orders denying Appellant's motion for summary judgment and granting Appellee partial summary judgment expunging part of the proof of claim and reducing the remainder is

**AFFIRMED.**

---

2. Appellant also contends that the Bankruptcy Court abused its discretion in failing to stay this proceeding pending the California Court of Appeal's review of the Superior Court's decision to vacate the arbitration award. Apart from the considerable delay that waiting for the California appellate ruling would occasion, affecting a timely resolution of the Drexel bankruptcy, Judge ·Conrad's discretionary denial of stay was appropriate, especially since the forfeiture of the undisclosed claims was an area well understood by a bankruptcy judge.

3. The admission came in the following colloquy between this Court and Appellant's counsel:
 THE COURT: Were these claims asserted in the schedules or not?
 MR. STEINER: The stock was mentioned, your Honor. **There was no mention of any other claims.**
 THE COURT: Does that mean that there are no other claims if they're not recited?
 MR. STEINER: ... [I]t's not that there are no other claims. It's that **those claims belong to the trustee, your Honor. That's what my understanding is.**