**Robert WELSH, Individually and as Administrator of the Estate of Dale H. Welsh, Plaintiffs,**

v.

**QUABBIN TIMBER, INC., Robert Chase, and Shawmut Bank, N.A., Defendants.**

**Civil Action No. 94–40041–NMG.**

United States District Court, D. Massachusetts.

Aug. 8, 1996.

John A. Cvejanovich, O'Connell, Flaherty & Attmore, Springfield, MA, James T. Flaherty, O'Connell, Flaherty & Attmore, Hartford, CT, for Robert Welsh.

Herbert F. Travers, III, Travers, Murphy & O'Connor, Worcester, MA, for Quabbin Timber, Inc.

Arthur W. Young, III, Boston, MA, Natasha C. Lisman, Sugarman, Rogers, Barshak & Cohen, Boston, MA, for Shawmut Bank, N.A.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is a motion by Fleet National Bank, as successor in interest to Shawmut Bank, N.A. ("the Bank"), for summary judgment on Count V of plaintiff's Third Amended Complaint. In its entirety, Count V alleges that:

44. Defendant, Shawmut Bank, N.A., is a bank incorporated under the laws of and engaged in the business of banking in Massachusetts and Connecticut.

45. Defendant, Shawmut Bank, N.A., through its employee, officer, agent or representatives, intentionally, improperly and wrongly interfered with the advantageous business relationship which Plaintiff, Robert Welsh, Jr., had with Quabbin Timber, Inc., to wit: by demanding his severance as an officer and director of Quabbin Timber, Inc., demanding that he resign any and all officerships and/or directorships of Quabbin Timber, Inc., and by demanding that he be divested of all stock in Quabbin Timber, Inc.

46. As a result of the intentional, improper and wrongful acts by Shawmut Bank, N.A., Plaintiff Robert Welsh Jr. has suffered economic loss and damages.

On May 1, 1996, the Bank filed its motion for summary judgment an to Count V, on the grounds that under well-established principles of bankruptcy law, the plaintiff is both estopped from, and lacks standing to assert, the claims set forth in that Count. For the reasons elaborated on below, the Bank's motion will be allowed.[1]

## I. *The Summary Judgment Standard*

■ Summary judgment shall be rendered where the pleadings, discovery on file and affidavits, if any, show "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The Court must view the entire record in the light most favorable to the plaintiffs and indulge all reasonable inferences in their favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993).

■ With respect to a motion for summary judgment, the burden is on the moving party to show that "there is an absence of evidence to support the non-moving party's case." *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). If the movant satisfies that burden, it shifts to the non-moving party to establish the existence of a genuine material issue. *Id.* In deciding whether a factual dispute is genuine, this Court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmovant's assertion of mere allegation or denial of the pleadings is insufficient on its own to establish a genuine issue of material fact. Fed.R.Civ.P. 56(e).

## II. *Procedural Background*

The case at bar was originally filed in March, 1994, by Robert Welsh ("Welsh") and his wife, Dale H. Welsh, against his former employer, Quabbin Timber, Inc. ("Quabbin Timber") and the fiduciary and administrator of Quabbin Timber's employee benefit plan. The plaintiffs filed a First Amended Complaint on October 17, 1994, which added the Bank as a defendant and alleged that it had:

---

1. The Bank's Motion to Strike plaintiff's Opposition to its Motion for Summary Judgment, Docket # 50, will be DENIED.

intentionally, improperly and wrongly interfered with the advantageous business and employment relationship which [Mr. Welsh] had with [Quabbin], to wit: by demanding his severance as an officer and director of Quabbin, Inc.

First Amended Complaint, ¶ 46.

One year later, on October 2, 1995, Mr. Welsh filed his Second Amended Complaint, which substituted him as Administrator for his late wife's estate as a plaintiff. All the remaining allegations, including those against the Bank, were otherwise unaltered.

On January 17, 1996—two months before the then-scheduled trial—Welsh moved for leave to file a Third Amended Complaint, which added, for the first time, the allegation that the Bank's tortious interference with plaintiff's advantageous business and employment relationship with Quabbin included "demanding that he be divested of all stock in Quabbin Timber, Inc." Third Amended Complaint, ¶ 45. This Court allowed that motion on February 21, 1996, and the Bank filed an answer to the Third Amended Complaint.

### III. *Factual Background*

On March 15, 1996, the Bank took a second deposition of Mr. Welsh, focusing on the facts related to the "forced divestiture" theory raised for the first time in his Third Amended Complaint. The Bank asserts that it is Welsh's own deposition testimony that forms the principal basis for its motion for summary judgment. Welsh's testimony provides the following relevant factual background:

1. Welsh established a borrowing relationship with the Bank in the mid–1980s, first by obtaining commercial financing for Northeast Treaters (a company he had co-founded), and later by taking out a personal loan from the Bank's Private Banking department. Welsh Dep. Vol. II at 6–8. In 1989, Welsh played a critical role in obtaining from the Bank a commercial line of credit for Quabbin.[2] Welsh Dep. Vol. I at 10–11, 12–15, 39; Vol. II at 6, 16.

2. Prior to 1990, Welsh's involvement in managing Quabbin was limited. After he moved to Florida in 1990, however, Welsh decided to establish a southern branch of Quabbin. The Florida operation sustained a loss and closed in late 1990. *See* Welsh Dep. Vol. I at 36, 51–52, 81–82; Vol. II at 16, 22, 23.

3. In early 1991, Welsh became delinquent on his personal loan from the Bank, the amount of which exceeded $200,000 and in late July of that year plaintiff declared bankruptcy in Florida. Welsh Dep. Vol. II at 10, 23–25.

4. Before filing for bankruptcy, Welsh spoke on several occasions with Chase (Quabbin's day-to-day manager), who informed plaintiff about the Bank's reaction to Welsh's delinquency with respect to his personal loan. *See* Welsh Dep. Vol. II at 27–31, 36–38, 48–50, 53–57. Based upon those conversations, Welsh was aware that:

a) the Bank wanted him "to not own stock in Quabbin, to get out because of [his] delinquency on the personal loan," Welsh Dep. Vol. II at 30;

b) Chase thought Shawmut "would pull the line if [Welsh] owned stock in Quabbin Timber," *Id.* at 31;

c) the Bank "would continue loaning Quabbin [ ] money if [he] did not own stock," *Id.* at 36; and

d) the Bank's position remained the same in 1992 and 1993. *Id.* at 37–38.

5. To avoid having to comply with the Bank's condition that plaintiff be divested, Chase and Welsh looked, unsuccessfully, for alternative sources of financing for Quabbin. For example, before he filed for bankruptcy, Welsh made inquiries about mortgaging his Florida home. Welsh Dep. Vol. II at 26, 32–35, 49–50.

6. In Welsh's opinion, the value of his Quabbin stock was "very diminished" in 1991 because the Bank's position effectively turned him into a "forced seller." Welsh Dep. Vol. II at 43–44. Welsh felt that the Bank's position was "immoral" and, when he entered law school in 1992–93, he discussed it

---

**2.** Quabbin previously had been owned entirely by the Welsh family, and its stock later was ac-    quired in equal parts by Welsh and defendant Robert Chase ("Chase").

with a professor who believed that the Bank's position was "illegal." *Id.* at 84–85, 122.

7. In his statement to the Bankruptcy Court of "Financial Affairs for Debtor Not Engaged in Business," Welsh listed his Quabbin stock as an asset. *See* Welsh Dep. Vol. II at 65–68; Exh. 4 at p. 19, Item t. Plaintiff did not, however, list any potential claims against the Bank in that statement. *See id.* at Exh. 4 at p. 18, Item q. Moreover, Welsh did not inform the Bankruptcy Trustee, the Trustee's attorney, or his own bankruptcy attorney of Shawmut's condition that it would terminate Quabbin's financing if he regained ownership of the stock. Welsh Dep. Vol. II at 84.

8. On August 11, 1993, plaintiff was granted discharge from his debts. Welsh Dep. Vol. II at 44–45; Exh. 3. Afterward, his father (Robert F. Welsh, Sr.) purchased plaintiff's stock from the Bankruptcy Trustee for resale to Chase. Welsh Dep. Vol. II at 81–82. Seven months after his discharge, Welsh commenced the instant action.

## IV. *Legal Analysis*

The Bank advances two arguments in support of its motion for summary judgment: 1) Count V is barred by the doctrine of judicial estoppel, and 2) even if he is not estopped from bringing his claim, plaintiff lacks standing to assert the claims set forth in Count V.

### A. *Judicial Estoppel*

The First Circuit has explained that, "in broad outline the doctrine [of judicial estoppel] precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987). The Bank's argument that judicial estoppel precludes Welsh from prosecuting Count V reasons that:

1) based on Welsh's own deposition testimony, he was aware of the Bank's alleged wrongful conduct and the appreciable harm caused by that conduct *before* he filed for bankruptcy in Florida,

2) the cause of action asserted in Count V had fully accrued as of the time he filed for bankruptcy,

3) it is a fundamental tenet of bankruptcy law that a debtor must disclose all of his assets, including claims and causes of action and, accordingly,

4) Welsh's failure to disclose the cause of action against the Bank prevents his subsequent attempt to pursue Count V. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir.), *cert. denied*, 488 U.S. 967, [109 S.Ct. 495, 102 L.Ed.2d 532] (1988).

Insight into the doctrine of judicial estoppel may be gleaned from *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir.), *cert. denied*, 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993). In *Payless*, the plaintiff/former debtor ("Payless") had filed for bankruptcy, obtained a discharge of its debts, and then filed a lawsuit seeking damages for defendants' wrongful business practices which allegedly caused its bankruptcy. Noting that Payless had not even vaguely referred to its present claims in any of its bankruptcy filings, the First Circuit applied the doctrine of judicial estoppel to bar Payless' claims, observing that:

> The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in Payless's present suit, it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively.... Payless, having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis. This may not be strictly equitable estoppel, as the court observed. Indeed, defendants may have a windfall. However, it is an unacceptable abuse of judicial proceedings.

*Id.* (internal citation omitted).

The Bank also relies upon *Hoffman v. First National Bank of Akron, Iowa*, 99 B.R.

929 (N.D.Iowa 1989), in which the Court applied the judicial estoppel doctrine to a case in which the plaintiff/former debtor obtained a creditor's approval of a plan of reorganization, and only then filed a lawsuit against the Bank/former creditor:

> If a debtor has future plans for future litigation with a creditor, the creditor is entitled to know about it so that the creditor can plan its action in the bankruptcy case accordingly. Likewise, the [Bankruptcy] Court is entitled to know about it, to assist the Court in making a fully informed decision about plan confirmation.

99 B.R. at 935–36.

In *Hoffman*, the debtor argued that principles of estoppel should not be applied because he was not aware of his claim as of the date of filing. The Court rejected that assertion, however, concluding that:

> [The proffered excuse] is not a valid reason to fail to disclose the claim. The Debtor knew all of the facts that were pertinent to its current lawsuit when it filed bankruptcy. No new information was acquired post-filing other than counsel's purported discovery of a legal basis for the lawsuit. The facts underlying the cause of action were known to Debtor long before the plan was confirmed.... Debtor had a duty to amend his schedules to reflect this claim and to disclose the existence of the potential cause of action to creditors in his plan and disclosure statement.

*Id.* at 933.

■ Applying the foregoing principles to the case at bar, this Court concludes that the doctrine of estoppel prevents Welsh from advancing the allegations of Count V against the Bank. Welsh's own deposition testimony demonstrates that, prior to his filing for bankruptcy, plaintiff was aware of the Bank's demand that he divest himself or be divested of his stock in Quabbin Timber, and that such demands depressed the value of his stock.

Before obtaining his discharge from bankruptcy, Welsh had spoken with a law professor who indicated that he believed the Bank's position to be illegal. In short, Welsh sought and obtained a discharge from his debts, including his debt to the Bank, without disclosing his potential claims against the Bank either in his original schedule or in any amendment thereto. "[H]aving obtained judicial relief on the representation that no claims existed, [Welsh] cannot now resurrect them and obtain relief on the opposite basis." *Payless*, 989 F.2d at 571.[3]

### B. Lack of Standing

■ A second reason warranting the dismissal of Count V is that Welsh lacks standing to assert it. In *Carlock v. Pillsbury Co.*, 719 F.Supp. 791, 856 (D.Minn.1989), the Court observed that a cause of action "is a property right which passes to the trustee in bankruptcy, even if such cause of action is not included in schedules filed with the Bankruptcy Court." Moreover, "property that is not formally scheduled is not abandoned and therefore remains part of the estate." *Rosenshein v. Kleban*, 918 F.Supp. 98, 102–03 (S.D.N.Y.1996). Accordingly,

> [c]ourts have held that because an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed.

*Id.* at 103; *see also In re Drexel Burnham Lambert Group, Inc.*, 160 B.R. 508, 514 (S.D.N.Y.1993).

It follows ineluctably from the foregoing that Welsh's undisclosed claims against the Bank, if any, remained in his bankruptcy estate after his discharge and, accordingly, he lacks standing to assert them in his own name in the present action.

---

3. This Court is unpersuaded by plaintiff's unsupported assertions that there exist genuine issues of material fact which preclude the grant of summary judgment. Indeed, a party wishing to avert summary judgment "cannot rely on an absence of competent evidence, but must *affirmatively point to specific facts* that demonstrate the existence of an authentic dispute." *McCar-*

*thy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995) (emphasis supplied). While repeatedly asserting that trialworthy issues of material fact exist, plaintiff fails to direct this Court's attention to any evidence that calls into dispute or rebuts the facts upon which this Court's conclusion is based.

## ORDER

For the foregoing reasons:

1. Defendant's Motion to Strike [Docket # 50] is DENIED; and

2. Defendant's Motion for Summary Judgment [Docket # 45] is ALLOWED.

So ordered.