**PHOENIX PETROLEUM COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–315C.**

United States Court of Federal Claims.

May 11, 1998.

J. Keith Burt, McKenna & Cuneo, L.L.P., Washington, DC, for plaintiff, with whom were Allen B. Green, McKenna & Cuneo, L.L.P., Washington, DC, and Doron A. Henkin, Toll, Ebby, Langer & Marvin, Philadelphia, PA, of counsel.

Mark A. Melnick, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director. Howard M. Kaufer, Defense Logistics Agency, Defense Fuel Supply Center, Fort Belvoir, VA, of counsel.

## OPINION

MARGOLIS, Judge.

This government contracts action is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment. Plaintiff contends that it is entitled to quantum meruit recovery because a provision of its jet fuel contract with the United States allegedly violates § 16.203 of the Federal Acquisition Regulations ("FAR"). Defendant argues that the court should dismiss plaintiff's quantum meruit claim or grant summary judgment in defendant's favor because (1) plaintiff lacks standing to bring the claim, (2) plaintiff waived its right to bring the claim, (3) the claim is barred by judicial and equitable estoppel, and (4) the claim is barred by res judicata. After careful evaluation of both parties' written submissions, and after hearing oral argument, the court grants defendant's motion for summary judgment because plaintiff lacks standing to sue and plaintiff's claim is barred by res judicata.

## FACTS

On September 8, 1989, the Defense Fuel Supply Center ("DFSC") awarded contract DLA600–89–D–0572 ("contract 572") to plaintiff, Phoenix Petroleum Company, to deliver JP–4 jet fuel to four military bases in Pennsylvania and Ohio for one year. After completion of this contract, plaintiff executed a similar follow-on contract, DLA600–90–D–0542 ("contract 542"), on September 4, 1990. Both contracts contained an economic price adjustment clause ("EPA clause"), B19.33, that adjusted the contract price for jet fuel on a monthly basis. The government terminated contract 542 for default on January 15, 1991. See Appeal of Phoenix Petroleum Co., ASBCA No. 42763, 96–2 BCA ¶ 28,284, at 141,211, aff'd, 113 F.3d 1255 (Fed.Cir.1997). The Armed Services Board of Contract Appeals ("ASBCA") upheld the termination on appeal. See id.

On February 13, 1991, plaintiff filed a voluntary petition for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Eastern District of Pennsylvania. Pursuant to 11 U.S.C. § 521(1), plaintiff filed a list of creditors and a schedule of assets. Plaintiff named DFSC on its list of creditors. As part of the § 521(1) requirement to schedule all assets, plaintiff was obligated to disclose all contingent and unliquidated claims of every nature, including counterclaims. Plaintiff disclosed the following claims against DFSC:

Claim against DFSC (DFSC II) as listed in response to question 12a on Statement of Financial Affairs. Value approximately $10,000.

Unfiled claim against DFSC for improper termination of JP4 contract after assuring Debtor that it would not be terminated and Debtor's acting in reliance thereon. Value unknown, but potentially very large.

Def.'s App. at 39. No trustee was appointed in plaintiff's bankruptcy case. Instead, plaintiff conducted business as a debtor-in-possession.

In December 1991, the United States, on behalf of DFSC, submitted a motion for relief from the automatic stay imposed in the bankruptcy proceedings to allow the United States to setoff plaintiff's indebtedness against sums owed to plaintiff. Attached to this motion for relief, the United States submitted an amended proof of claim against plaintiff for $808,830.86. This amended proof of claim included claims for overpayments under contracts 572 and 542 and reprocurement and resupply costs resulting from plaintiff's default under contract 542. On January 23, 1992, plaintiff and the United States entered into a stipulation regarding defendant's motion for relief from the automatic stay. In the stipulation, the United States admitted that it owed plaintiff $317,003.53 for prepetition payables under various contracts. Furthermore, in the stipulation, plaintiff claimed the United States owed additional amounts to plaintiff, and the United States claimed plaintiff owed the United States

$808,830.86. Additionally, the parties agreed that the United States could withhold payment of the $317,003.53 pending a final order by the bankruptcy court or ASBCA determining the existence and amount of the United States's pre-petition claims against plaintiff. Finally, the United States agreed that it would not oppose confirmation of plaintiff's second amended plan of reorganization ("plan of reorganization").

Plaintiff's plan of reorganization and modified disclosure statement, filed in the bankruptcy proceedings on December 16, 1991, made no mention of plaintiff's present quantum meruit claim against defendant. Article VIII of the plan of reorganization did, however, include a general retention of claims provision. The plan of reorganization set aside a maximum of $1,000,000 for unsecured claims against plaintiff, to be distributed on a pro rata basis. Except for claims of the Bank Brussels Lambert, the plan discharged plaintiff from the remaining $2,000,000 balance of its unsecured debts. On September 21, 1992, the bankruptcy court confirmed plaintiff's plan of reorganization.

On September 10, 1992, the DFSC contracting officer issued a final decision regarding the United States's claims against plaintiff for overpayments under contracts 572 and 542. The contracting officer determined that plaintiff owed the United States $94,-890.49 in overpayments. Plaintiff appealed this decision to the ASBCA and filed a counterclaim for breach of contract based on defendant's failure to purchase the minimum quantity of jet fuel under contract 572. Plaintiff's counterclaim was later dismissed after plaintiff certified a $126,629.81 claim for failure to purchase the minimum quantity of jet fuel under contract 572. Plaintiff did not raise the present quantum meruit claim during the ASBCA proceedings.

The parties entered into a settlement agreement, dated November 23, 1993, that settled the United States's overpayment claims and plaintiff's breach of contract

claim. The settlement agreement stated that within two days of the complete execution of the agreement, plaintiff "agrees to request dismissal with prejudice" of the abovementioned claims before the ASBCA. On November 9, 1993, Administrative Judge Elizabeth Tunks dismissed the claims with prejudice.[1]

On September 1, 1995, plaintiff submitted a claim to the DFSC contracting officer seeking an adjustment of the final prices under contract 572 based upon an opinion from the United States Court of Federal Claims, *Mapco Alaska Petroleum, Inc. v. United States*, 27 Fed.Cl. 405 (1992), that EPA clause B19.33 was invalid. In *Mapco*, the court noted that FAR § 16.203–1 provides for three types of economic price adjustments and found that EPA clause B19.33 did not fit within any of these three types. *See Mapco Alaska Petroleum*, 27 Fed.Cl. at 408–11. Consequently, the court held that the contract did not comply with FAR § 16.203. *See id.* at 416.

The contracting officer denied plaintiff's claim. Plaintiff then filed the present suit alleging that contract 572 was illegal because EPA clause B19.33 violated FAR § 16.203. Plaintiff seeks to recover under quantum meruit the difference between the fair market value of the fuel that plaintiff supplied to the United States and the amounts plaintiff received under the contract.

## DISCUSSION

### I. Standing

Defendant contends that plaintiff lacks standing to bring this suit because the present claim belongs to plaintiff's bankruptcy estate and not to plaintiff. The court agrees. When a debtor like plaintiff files for bankruptcy, it must file a schedule of assets including any causes of action the debtor may have at the time of filing. *See* 11 U.S.C. § 521(1); *Tyler House Apartments, Ltd. v.*

---

1. The ASBCA order of dismissal stated: "The disputes which are the subject of these appeals having been settled, the appeals are hereby dismissed subject to reinstatement only in the event the settlement is not consummated." Def.'s App. at 195. Because the settlement was in fact consummated, the court concludes that the effect of this order was to dismiss the case with prejudice. Additionally, the court finds it significant that plaintiff agreed in the settlement agreement to request a dismissal with prejudice of the claims before the ASBCA.

*United States,* 38 Fed.Cl. 1, 6 (1997); *Weiner v. United States,* 15 Cl.Ct. 43, 45 (1988); *Rosenshein v. Kleban,* 918 F.Supp. 98, 102 ·(S.D.N.Y.1996). At the time a debtor files for bankruptcy, a bankruptcy estate is created and the debtor's assets become the property of this estate. *See* 11 U.S.C. § 541(a)(1); *Tyler House Apartments,* 38 Fed.Cl. at 6; *Rosenshein,* 918 F.Supp. at 102. At the close of the bankruptcy proceedings, any assets, including causes of action, that were scheduled by the debtor and not otherwise administered are deemed abandoned and revert to the debtor free and clear of all claims and interests of creditors. *See* 11 U.S.C. § 554(c); *Tyler House Apartments,* 38 Fed.Cl. at 6; *Rosenshein,* 918 F.Supp. at 102. However, all unscheduled claims remain the property of the bankruptcy estate, and the debtor loses all rights to enforce these claims in its own name. *See* 11 U.S.C. § 554(d); *Tyler House Apartments,* 38 Fed. Cl. at 6; *Weiner,* 15 Cl.Ct. at 45; *Rosenshein,* 918 F.Supp. at 102–03; *In re Drexel Burnham Lambert Group, Inc.,* 160 B.R. 508, 514 (S.D.N.Y.1993). If a claim belongs to the bankruptcy estate, the debtor does not have standing to bring the claim for its own benefit.[2] *See Tyler House Apartments,* 38 Fed.Cl. at 6; *Rosenshein,* 918 F.Supp. at 103; *Welsh v. Quabbin Timber, Inc.,* 199 B.R. 224, 229 (D.Mass.1996); *Stanley v. Sherwin–Williams Co.,* 156 B.R. 25, 26 (W.D.Va.1993).

 In this case, plaintiff failed to schedule its present quantum meruit claim. At the close of the bankruptcy proceedings, therefore, the quantum meruit claim did not revert back to plaintiff, but remained the property of plaintiff's bankruptcy estate. Consequently, plaintiff lacks standing to bring the present claim for its own benefit. *See Tyler House Apartments,* 38 Fed.Cl. at 6; *Rosenshein,* 918 F.Supp. at 103; *Welsh,*

199 B.R. at 229; *Stanley,* 156 B.R. at 26. Plaintiff contends, however, that it has standing to bring the quantum meruit claim even though it did not schedule the claim because plaintiff retained the claim through the following provision of its plan of reorganization:

> [A]ll Claims against a third party on account of .an indebtedness, and any and all other Claims owed to or in favor of [Phoenix] are hereby preserved and retained for the enforcement by [Phoenix] subsequent to the Effective Date of this Plan and the proceeds thereof shall inure to [Phoenix] and/or BBL [3] rather than to the Creditors receiving distributions hereunder.

Def.'s App. at 91.

 After the conclusion of the bankruptcy proceedings, a debtor may enforce an unscheduled claim if it was properly retained pursuant to 11 U.S.C. § 1123(b)(3) in the plan of reorganization. *See* 11 U.S.C. § 1123(b)(3); *Harstad v. First Am. Bank,* 39 F.3d 898, 902–03 (8th Cir.1994); *In re Petrowax P.A., Inc.,* 200 B.R. 538, 540–41 (Bankr. D.Del.1996); *In re Paramount Plastics, Inc.,* 172 B.R. 331, 333 (Bankr.W.D.Wash.1994). Of the few courts that have considered what language is necessary to retain a claim under § 1123(b)(3), most have found that § 1123(b)(3) requires debtors to use specific language of reservation so that creditors are sufficiently informed, before they vote on the debtor's plan of reorganization, about potential causes of actions that might enlarge the estate. *See, e.g., Harstad,* 39. F.3d at 903; *Petrowax P.A.,* 200 B.R. at 540–41; *Paramount Plastics,* 172 B.R. at 333–36. Furthermore, the United States District Court for the Southern District of New York recently held that a general retention clause similar to the retention clause in the present case [4] did not preserve undisclosed causes of action known [5] to plaintiff when he filed for

---

2. The debtor could pursue the claim by reopening the bankruptcy proceedings so that its creditors may benefit from any recovery. *See Rosenshein,* 918 F.Supp. at 103.

3. BBL is the Bank Brussels Lambert, one of plaintiff's creditors.

4. The general retention clause in *Rosenshein* provided that the debtor would retain the right to

enforce any cause of action that became property of his bankruptcy estate when he filed for bankruptcy. *See Rosenshein,* 918 F.Supp. at 103 n. 4.

5. Plaintiff contends that the present claim was unknown at the time it filed its plan of reorganization because the Court of Federal Claims had not yet issued the *Mapco* decision, in which the court found that EPA clause B19.33 violated FAR § 16.203. The *Mapco* decision only alerted

bankruptcy. *See Rosenshein,* 918 F.Supp. at 103–04 n. 4; *see also Westland Oil Dev. Corp. v. MCorp Management Solutions, Inc.,* 157 B.R. 100, 103 (S.D.Tex.1993) (finding that a general retention clause failed to preserve an undisclosed cause of action). In the present case, plaintiffs retention clause attempted to retain "all Claims against a third party on account of indebtedness, and any and all other Claims owed to" plaintiff. Def.'s App. at 91. There is no language in this retention clause to identify the present quantum meruit claim against DFSC. In fact, DFSC is not even mentioned. This retention clause could not, therefore, have given plaintiff's creditors notice of the present $2,228,319 quantum meruit claim. Consequently, this court concludes that plaintiff failed to retain its quantum meruit claim pursuant to § 1123(b)(3) because it did not use specific language in its plan of reorganization retaining this type of claim. Accordingly, the court holds that plaintiff lacks standing to bring this suit for its own benefit because plaintiff did not schedule the quantum meruit claim or retain it pursuant to § 1123(b)(3).[6]

## II. Res Judicata

 The court concludes further that even if plaintiff had standing to bring this suit, the present claim would be barred by the doctrine of res judicata because of the prior proceedings before the ASBCA. The doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, " '[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " *Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983) (quoting *Cromwell v. County of Sac,*

94 U.S. 351, 352, 24 L.Ed. 195 (1876)). Res judicata will bar a second suit where the prior suit (1) involved the same parties or their privies, (2) resulted in a final judgment on the merits by a court of competent jurisdiction, and (3) was based on the same cause of action. *See DeVries v. United States,* 28 Fed.Cl. 496, 498 (1993); *Beverly v. United States,* 24 Cl.Ct. 197, 200 (1991), *aff'd,* 972 F.2d 1354 (Fed.Cir.1992); *Jensen v. United States,* 17 Cl.Ct. 583, 588 (1989). A voluntary dismissal with prejudice is considered a final judgment on the merits for purposes of res judicata. *See Chromalloy Am. Corp. v. Kenneth Gordon, Ltd.,* 736 F.2d 694, 697 (Fed. Cir.1984); *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n,* 721 F.2d 1305, 1314 (Fed.Cir.1983); *Mosely v. United States,* 15 Cl.Ct. 193, 194 (1988). To determine whether the two suits are based on the same cause of action, the court must look to the underlying facts. If the underlying facts are identical in both suits, then the suits are based on the same cause of action. *See Bernaugh v. United States,* 38 Fed.Cl. 538, 544 (1997); *see also Chandler v. United States,* 31 Fed.Cl. 106, 110, *aff'd,* 39 F.3d 1196 (Fed.Cir.1994) (noting that a plaintiff is barred from relitigating the same transactional facts even though they are cloaked in a different cause of action or theory of recovery). A plaintiff must assert all claims arising out of the same transaction or occurrence at once. *See Bernaugh,* 38 Fed.Cl. at 544. Therefore, in addition to preventing relitigation of all claims that were actually litigated, res judicata bars all claims that could have been litigated. *See Finch v. Hughes Aircraft Co.,* 926 F.2d 1574, 1581 (Fed.Cir. 1991); *DeVries,* 28 Fed.Cl. at 498.

 In the present suit, the proceedings before the ASBCA involved the same parties or their privies, resulted in a final judgment on the merits, and were based on the same cause of action. First, the parties in the

plaintiff to the fact that the EPA clause B19.33 was invalid by holding that the clause was inconsistent with current law, FAR § 16.203. Because plaintiff could have claimed that EPA clause B19.33 violated FAR § 16.203 when plaintiff filed its plan of reorganization, plaintiff's quantum meruit claim was not unknown at that time.

6. The court notes that a few courts have viewed whether a debtor can bring an unscheduled claim for its own benefit as a real party in interest issue rather than as a standing issue. *See, e.g., Weiner,* 15 Cl.Ct. at 45–46; *Tate v. Snap-on Tools Corp.,* 1997 WL 106275, at *2–5 (N.D.Ill. 1997). This court, however, follows the majority in treating it as a standing issue.

ASBCA proceedings and present case are identical. Second, the ASBCA proceedings were dismissed with prejudice as a result of the settlement and therefore constitute a final judgment on the merits. *See supra* note 1 and accompanying text; *Chromalloy Am. Corp.*, 736 F.2d at 697; *Young Eng'rs*, 721 F.2d at 1314; *Mosely*, 15 Cl.Ct. at 194. Third, the present claim is based on the same cause of action at issue before the ASBCA. The ASBCA proceedings involved a claim by the United States that it overpaid plaintiff for shipments of jet fuel delivered under contract 572 and 542. Contract 572 is also the contract at issue in the present case. Furthermore, the amount the United States owed plaintiff for each shipment of jet fuel was determined under EPA clause B19.33, the contract provision that is challenged in this case. In the ASBCA proceedings, plaintiff could have defended by contending that EPA clause B19.33 violated FAR § 16.203 and therefore made the contract illegal.[7] Instead, plaintiff counterclaimed that DFSC had breached contract 572 by failing to purchase minimum quantities. Plaintiff cannot now litigate a claim that it could have brought in the prior litigation before the ASBCA. *See Finch*, 926 F.2d at 1581; *DeVries*, 28 Fed.Cl. at 498. The court concludes, therefore, that the present suit is barred by res judicata.

## CONCLUSION

For the reasons stated, the court concludes that plaintiff lacks standing to bring the present suit and the suit is barred by res judicata. Because there are no genuine issues of material fact in dispute, defendant's motion for summary judgment is granted. The clerk will dismiss the complaint. Costs for defendant.

---

7. The court rejects plaintiff's argument that its current quantum meruit claim was unknown until the Court of Federal Claims issued its opinion in *Mapco*. *See supra* note 5. Furthermore, the court notes that *Mapco* was issued on December 22, 1992, almost a year before the ASBCA proceedings were dismissed on November 9, 1993.